UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

MOTIVA PERFORMANCE
ENGINEERING, LLC,

Case No. 19-12539-t7

Debtor.

**OPINION**

THIS MATTER is before the Court on Creig Butler's motion to determine that the automatic stay does not apply or, in the alternative, for relief from the stay. The Court held a final hearing on the motion on August 17, 2020. Having considered the parties' submissions, the evidence presented at the final hearing, and the docket, and being otherwise sufficiently advised, the Court finds that the motion is well taken and should be granted.

I. FACTS[1]

For the limited purpose of ruling on the Motion, the Court finds:

William Ferguson is a well-known local attorney—the eponymous founder of the law firm Will Ferguson and Assoc. and a self-described "car guy."[2] Together with partners David Rochau and Scott Fox, Ferguson owned and operated Motiva Performance Engineering, LLC, a "speed shop" that provided its customers with high-level performance modifications. Motiva also had a dealer license and, for a time, a showroom from which it sold cars on consignment. Motiva displayed some of Ferguson's cars. Ferguson is also the owner or part-owner of several other

---

[1] The Court takes judicial notice of its docket in this case, to consider the contents of the docket but not the truth of the matters asserted therein. *Johnson v. Spencer,* 950 F.3d 680, 705 (10th Cir. 2020).
[2] Ferguson has 70-75 automobiles in his collection, a seat on the board of a national classic car auction company, an active car restoration business, and a car leasing company, among other things.

businesses, including Dealerbank Financial Services, Ltd, which started as a "floor plan" lender and does auto financing and leasing, and Armageddon High Performance Solutions, which sells turbocharger kits.

In December 2014 Ferguson bought a 2012 Ferrari FF from a Texas dealer. Ferguson paid $200,000 in cash, drawn from a personal line of credit at Main Bank. Although Ferguson considered the Ferrari his own car, he titled it in Motiva's name to avoid paying excise tax.[3]

In 2014 Creig Butler hired Motiva to upgrade a 2009 Hummer H3TX. The work did not go well. Butler sued Motiva on February 28, 2017, in the Second Judicial District, State of New Mexico, No. D-202-CV-2017-01393 (the "State Court Action"). In his complaint Butler alleged that Motiva agreed to upgrade the Hummer for $20,000, but that two years and $70,000 later, Motiva returned the Hummer in an undrivable condition.

After a four-day trial, a jury returned a verdict on October 26, 2018, against Motiva for $292,001 plus costs, attorney fees, and post-judgment interest. The judgment was amended on April 3, 2019 (apparently to add the attorney fees and costs) to $337,317.90.

In October 2018, shortly after the jury verdict, Motiva transferred title to the Ferrari to Dealerbank. On November 26, 2018, the state court issued a writ of execution directing the sheriff to seize Motiva's assets to satisfy Butler's judgment. On December 5, 2018, the sheriff served the writ and attempted to seize Motiva's inventory of 40-50 boxed turbo kits. The sheriff's seizure was interrupted by Ferguson, who asserted that Motiva's landlord, Avatar Recoveries, LLC (another Ferguson entity), had a landlord's lien on Motiva's assets. The foiled execution led Butler to file an application on April 9, 2019, for a writ of attachment or preliminary injunction freezing

---

[3] Car dealers can transfer cars without paying excise tax. The New Mexico excise tax on used cars is 3%, so Ferguson avoided paying $6,000 in taxes by titling the Ferrari in Motiva's name.

Motiva's assets, including the Ferrari. The state court orally granted the application on April 18, 2019. For the next two weeks Ferguson and Butler's counsel negotiated a form of injunction order. On May 7, 2019, the state court entered a Preliminary Injunction and Order on Application for Writ of Attachment (the "Preliminary Injunction"). On June 28, 2019, the state court issued an order adding Armageddon, Ferguson, and Dealerbank as "relief defendants" in the State Court Action. The Preliminary Injunction gave the court jurisdiction over the relief defendants, allowing the court to adjudicate ownership of Motiva's inventory and the Ferrari.

Unbeknownst to Butler, his counsel, or the state court, while Ferguson was negotiating the form of the Preliminary Injunction he caused Dealerbank to borrow $120,000 from Main Bank on April 24, 2019, and pledged the Ferrari as collateral. Ferguson used the loan proceeds to pay down his line of credit at Main Bank. Butler did not learn about the pledge until after Motiva filed this case in November 2019.

In early October 2019, the state court held an evidentiary hearing on who owned the Ferrari, the turbo kits, and Motiva's other assets. The court issued 129 findings of fact and conclusions of law on October 28, 2019. The state court found, inter alia:

> 39. After the October 26, 2018 verdict was entered against Motiva, Ferguson promptly transferred the Ferrari out of Motiva's corporate name and into the name of another company over which he maintained control: Dealerbank Financial Services, Ltd (100 percent owned by Ferguson).
>
> 40. Continuing the Ferrari in Motiva's name put the vehicle at risk of execution; the vehicle could potentially be subject to Motiva's creditors' claims.
>
> 41. It is therefore apparent that the Ferrari remained in Motiva's corporate name from December 23, 2014, until October 30, 2018, for Ferguson to avoid liability . . . Ferguson . . . re-registered the vehicle into Dealerbank's name to avoid paying the judgment.
> . . . .
>
> 65. Ferguson's decision to take advantage of the 'convenience' of holding title in the Ferrari in the name of Motiva, the timing of transferring the title into

> Dealerbank's name, and claiming unsupported liens, reveals his disregard of New Mexico corporate and other laws in avoiding creditors and taxation.
>
> 66. This conduct demonstrates a pattern of circumventing New Mexico laws for his attempted personal benefit that counsel was trained and sworn to respect.
>
> 67. More significantly, Ferguson's decision to rely on the 'convenience' of using Motiva to hold title in the Ferrari was unfair and inequitable to taxpayers who were deprived of the timely deposit into the . . . 2014 tax base of the required excise tax (3 percent) on the $200,000 vehicle purchase ($6,000 excise tax).
> . . . .
>
> 76. Because the Certificate of Title to the Ferrari issued on October 30, 2018, to Dealerbank was made for Ferguson's convenience, i.e., to avoid paying the jury award against Motiva, and was unsupported by any payment of any consideration, it was in equity a sham.

The state court determined that Motiva, rather than Ferguson or Dealerbank, owned the Ferrari.[4]

On November 1, 2019, less than one week after the state court entered its findings of fact and conclusions of law, Motiva filed this bankruptcy case. Butler and Main Bank are Motiva's only listed secured creditors. On April 15, 2020, the Court entered a stipulated order converting the case to chapter 7. Philip Montoya was appointed the chapter 7 trustee.

Butler filed the motion on February 7, 2020, so he could pursue contempt proceedings against Ferguson and Dealerbank in the State Court Action. Butler wants the state court to sanction Ferguson and Dealerbank (but not Motiva) for allegedly violating the Preliminary Injunction by borrowing money against the Ferrari and paying down Ferguson's line of credit. Ferguson, Dealerbank, and Armageddon oppose the motion. The chapter 7 trustee does not object.

---

[4] In the present case, the parties concede that the Ferrari is estate property.

## II. DISCUSSION

A. The Automatic Stay

"The filing of a bankruptcy petition under any chapter of the Bankruptcy Code initiates a broad automatic stay that prevents any attempts to enforce or collect prepetition claims or any actions that would affect property of the estate." *In re Carbaugh*, 278 B.R. 512, 524 (10th Cir. BAP 2002); § 362(a).[5] "The stay [e]nsures that the debtor's affairs will be centralized, initially, in a single forum in order to prevent conflicting judgments from different courts and in order to harmonize all of the creditors' interests with one another." *Fidelity Mortg. Investors v. Camelia Builders, Inc.*, 550 F.2d 47, 56 (2d Cir. 1976); *In re Peeples*, 880 F.3d 1207, 1216 (10th Cir. 2018) ("[T]he automatic stay's specific purposes are to protect the debtor from collection efforts and to protect creditors from inequitable treatment."). Nevertheless, the Court has discretionary authority to terminate, annul, modify, or condition the automatic stay for "cause" upon the request of a party in interest and after notice and a hearing. § 362(d)(1); *Carbaugh*, 278 B.R. at 525.

B. The Automatic Stay Does Not Prevent Butler from Enforcing the Preliminary Injunction Against Ferguson, Dealerbank, and Armageddon.

The automatic stay does not prevent a creditor from pursuing claims against nondebtors. *See, e.g., Okla. Federated Gold & Numismatics, Inc. v. Blodgett*, 24 F.3d 136, 141 (10th Cir. 1994) ("stay provision does not extend to solvent codefendants of the debtor"). Similarly, "the stay afforded a corporate debtor does not extend to afford protection as well to the debtor's stockholders, principals, officers, directors, and employees." *In re Suburban W. Properties*, 504 B.R. 477, 488-89 (Bankr. N.D. Ill. 2013).

---

[5] Unless otherwise indicated, all statutory references are to 11 U.S.C.

There is a narrow exception to the general rule in "unusual situations as when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *Blodgett*, 24 F.3d at 141; *see also In re S.I. Acquisition, Inc.*, 817 F.2d 1142, 1147-48 (5th Cir. 1987) (stay does not prohibit actions against nonbankrupt third parties or codefendants except in very limited situations where the debtor and the nonbankrupt party can be considered one entity or have a unitary interest); *In re Xenon Anesthesia of Texas*, PLLC, 510 B.R. 106, 111 (Bankr. S.D. Tex. 2014) (automatic stay does not apply to actions against a non-debtor unless estate assets would be at risk if a court proceeding against a codefendant were allowed to continue).

The debtor may ask the bankruptcy court to enjoin actions against a non-debtor that would interfere with the bankruptcy processes. As explained in *In re Otero Mills, Inc.*, 21 B.R.777 (Bankr. D.N.M. 1982), affirmed, 25 B.R. 1018 (D.N.M. 1982):

> Section 105(a) of the Bankruptcy Code . . . empowers the Bankruptcy court to issue 'any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. Included in this provision is the power to issue injunctions under appropriate circumstances [to enjoin a creditor's action against a non-debtor third party.] To so enjoin a creditor's action against a third party, the court must find that failure to enjoin would affect the bankruptcy estate and would adversely or detrimentally influence and pressure the debtor through that third party. This power to enjoin assures that a creditor may not do indirectly that which he is forbidden to do directly Accordingly, [§ 105] permits this Court to enjoin a creditor's action against a third party codebtor or guarantor when the proper showing is made by the party requesting the injunction.

21 B.R. at 779 (citations omitted).

In this case, § 362(a) does not prevent Butler from proceeding against Ferguson, Dealerbank, or Armageddon. The "narrow exception" discussed above does not apply. Motiva has not sought *Otero Mills*-type injunctive relief. There is no evidence that Butler's effort to enforce

the Preliminary Injunction against Ferguson and Dealerbank would adversely affect the bankruptcy estate. On the contrary, if the state court orders Ferguson or Dealerbank to pay off the loan secured by the Ferrari, the estate would be $120,000 better off.

Furthermore, a trial court has the inherent power to enforce compliance with its lawful orders through civil contempt proceedings. *Shillitani v. U.S.*, 384 U.S. 364, 370 (1966). A party cannot violate a trial court's orders, thereby affronting the court's dignity, then seek shelter from the automatic stay to shield its conduct. *US Sprint Comm's Co. v. Buscher*, 89 B.R. 154, 156 (D. Kan. 1988). This is particularly true where, as here, the contempt proceedings would not diminish the bankruptcy estate. *In re Dingley*, 514 B.R. 591, 597-98 (9th Cir. BAP 2014) (a proceeding to address the disobedience of a state court order entered prior to the stay that does not interfere with bankruptcy estate property should be permitted); *David v. Hooker, Ltd.*, 560 F.2d 412, 418 (9th Cir. 1977) (same). Whether Ferguson and/or Dealerbank violated the Preliminary Injunction and, if so, what should be done to vindicate the court's dignity, are questions that should be determined by the state court. *See, e.g.*, *In re Am. Spectrum Realty, Inc.*, 540 B.R. 730, 747 (Bankr. C.D. Cal. 2015) (the state court was in the best position to interpret and enforce its temporary restraining order).

The Court will enter an order declaring that the automatic stay does not apply to the proposed contempt proceeding against Ferguson and Dealerbank.

C.  <u>If the Automatic Stay Applies, Cause Exists to Modify it to Allow Butler to Proceed in State Court</u>.

If the automatic stay did apply, Butler has shown "cause" to modify it so he can seek to enforce the Preliminary Injunction against Ferguson and Dealerbank.

"Cause" is a vague standard, not defined in the Bankruptcy Code. In the context of stay relief so a party can pursue litigation in a nonbankruptcy forum, courts have identified twelve

nonexclusive factors—the "*Curtis*" factors—to weigh when determining whether to modify the stay. *See In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984);[6] *In re Bridge*, 600 B.R. 98, 102-03 (Bankr. D.N.M. 2019) (discussing the *Curtis* factors). The relevance of each factor varies from case to case and the factors should not be applied by rote or with the effect of overlooking other relevant considerations. *See In re Crespin*, 581 B.R. 904, 909-10 (Bankr. D.N.M. 2018) (noting that certain *Curtis* factors are usually irrelevant and identifying additional factors that might be more relevant);[7] *In re Blair*, 534 B.R. 787, 792 (Bankr. D.N.M. 2015) (the cause determination must be made case-by-case).

The Court weighs the *Curtis*/*Crespin* factors as follows:

---

[6] The *Curtis* factors are: (1) Whether the relief will result in a partial or complete resolution of the issues; (2) the lack of any connection with or interference with the bankruptcy case; (3) whether the foreign proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases; (5) whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation; (6) whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question; (7) whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties; (8) whether the judgment claim arising from the foreign action is subject to equitable subordination under § 510(c); (9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under § 522(f); (10) the interest of judicial economy and the expeditious and economical determination of litigation for the parties; (11) whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and (12) the impact of the stay on the parties and the balance of hurt.

[7] The *Crespin* factors are: (1) Whether the nonbankruptcy court is a specialized tribunal; (2) whether granting stay relief would hinder or delay estate administration; (3) whether the facts of the matter require a deviation from the Court's core function of allowing or disallowing claims; (4) whether lifting the stay would promote judicial economy; (5) whether it would be less expensive for the parties to litigate in bankruptcy court; (6) whether lifting the stay would prejudice other creditors; (7) the movant's likelihood of prevailing in the litigation; and (8) whether the balance of the hurt weighs in favor of or against stay relief.

| Factor | Analysis | For/Against Stay Relief |
|---|---|---|
| Whether the relief would result in a partial/ complete resolution of the issues | The issue, i.e. whether Ferguson and Dealerbank violated the Preliminary Injunction, will be fully resolved by the state court. | For |
| The lack of connection to or interference with the bankruptcy case | Ferguson and Dealerbank are third parties. The proposed litigation could indirectly benefit, but would not interfere with, the bankruptcy case. | For |
| Whether the nonbankruptcy action involves debtor as a fiduciary | N/A | |
| Specialized tribunal | The state court is not a specialized tribunal, but it did issue the injunction so it is the proper court to determine whether the injunction was violated. | For |
| Whether debtor's insurance carrier assumed defense responsibility | N/A | |
| Whether the action involves only third parties and debtor is a mere bailee | N/A | |
| Whether the litigation would prejudice other creditors or interested parties | The interests of other creditors will not be prejudiced. To the contrary, they could benefit if, for example, the state court ordered Ferguson to get the Ferrari lien released. | For |
| Whether the State Court Action judgment is subject to equitable subordination | N/A | |
| Whether Creig's success would result in a judicial lien avoidable by Debtor | N/A | |
| Judicial economy and economical determination of litigation for the parties | The state court is familiar with the case and is in the best position to enforce the Preliminary Injunction. Judicial economy and the interests of justice would be better served by stay relief. | For |
| Progress of the State Court Action | Judgment has been entered in the State Court Action. Butler seeks to enforce the injunction. | For |
| Delay in Estate administration | Butler's proposed action would not delay estate administration. | For |
| Whether the facts warrant deviating from the Court's claim allowance function | N/A | |
| Likelihood of Success | Butler is likely to succeed | For |
| Balance of the Hurt | Butler would be prejudiced if he could not enforce the Preliminary Injunction. The estate may obtain an indirect benefit. Debtor would not be harmed. | For |

The *Curtis/Crespin* factors weigh in favor of granting the motion.

D.       <u>Standing to Enforce the Preliminary Injunction</u>.

Relying on *In re Hafen*, 616 B.R. 570, 578-79 (10th Cir. BAP 2020), Ferguson and Dealerbank argue that only the trustee has the right and authority to bring fraudulent transfer claims against them. That is true. However, Butler is not asking for permission to pursue estate fraudulent transfer claims. Rather, he wants to pursue his own claims against them. *Hafen* does not apply.

### III.    <u>CONCLUSION</u>

The automatic stay does not apply to the claims Butler may have against Ferguson and Dealerbank for allegedly violating the Preliminary Injunction. Even if the stay did apply, however, there is cause to modify it to allow Butler to pursue a contempt proceeding against them. The motion shall be granted in a separate order.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: September 8, 2020
Copies to: Electronic notice recipients