UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

MOTIVA PERFORMANCE
ENGINEERING, LLC,  Case No. 19-12539-t7

Debtor.

**OPINION**

Before the Court is the second fee application of the chapter 7 trustee's expert witness, an accounting firm. The Trustee hired the firm to testify about the solvency of the debtor and other accounting and financial matters in an adversary proceeding the Trustee brought against William Ferguson and others (together, the "Ferguson Defendants"). The proceeding resulted in a large judgment against the Ferguson Defendants, which is on appeal.

The Ferguson Defendants objected to the fee application, arguing that the fees sought (about $32,000) are unreasonable and the services unnecessary. The Court took evidence and heard arguments of counsel at a final hearing. It now rules that the fee application should be granted.

A.  Facts.[1]

The Court finds:[2]

---

[1] The Court takes judicial notice of its docket and of relevant public records, including *Creig Butler v. Motiva Performance Engineering, LLC, et al.*, Case No. D-202-CV-2017-01393, pending in the Second Judicial District of New Mexico (the "State Court Action"). *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may sua sponte take judicial notice of its docket and of facts that are part of public records).

[2] Some of the Court's findings are in the discussion section of the opinion. They are incorporated by this reference.

William Ferguson is a well-known local attorney, the sole owner of the law firm Will Ferguson and Associates ("WFA"), and a car aficionado. Ferguson is the majority owner of Motiva Performance Engineering, LLC, a New Mexico limited liability company ("Motiva").

Ferguson formed Motiva on April 11, 2007, to acquire Speed Dreams, a "speed shop." Motiva provided customers with high-level performance modifications, using after-market parts purchased from different vendors. Motiva owned at least one car dealer license and, for a time, a showroom from which it sold cars on consignment, including some of Ferguson's cars.

Using its dealer license, Motiva had a number of cars titled in its name that Ferguson claims he paid for and belong to him, including a 2012 Ferrari FF.

In 2014, Creig Butler hired Motiva to upgrade a 2009 Hummer H3TX. The work did not go well. Butler sued Motiva on February 28, 2017, in the Second Judicial District, State of New Mexico, No. D-202-CV-2017-01393 (the "State Court Action"). In his complaint Butler alleged that Motiva agreed to upgrade the Hummer for $20,000,[3] but two years and $70,000 later, Motiva returned the Hummer in an undrivable condition. On October 26, 2018, after a four-day jury trial, the jury returned a verdict against Motiva for $292,001 plus costs, attorney fees, and post-judgment interest. The judgment was increased on April 3, 2019, to $337,318, apparently to add the attorney fees and costs.

On November 1, 2019, Motiva filed this case as a chapter 11 case. The case converted to chapter 7 on April 15, 2020. Phillip Montoya (the "Plaintiff" or "Trustee") was appointed chapter 7 trustee. The Trustee retained Lane & Nach, P.C. as his general bankruptcy counsel, in which capacity it continues to serve.

---

[3] Unless part of quoted text, all dollar figures are rounded to the nearest dollar.

The Trustee sued the Ferguson Defendants on September 2, 2021, asserting claims for turnover, avoidance of fraudulent transfers, breach of fiduciary duty, alter ego, and other claims. The Ferguson Defendants were ably represented and defended the proceeding vigorously.

A key fact in dispute was Motiva's solvency at relevant times. On January 5, 2022, the Court approved the Trustee's retention of Keith Bierman, CPA, of MCA Financial Group, Ltd ("MCA"), as an expert witness to testify about solvency and other issues, and to advise the Trustee in the adversary proceeding.

The Trustee convinced MCA, based in Phoenix, Arizona, to discount its normal hourly rates to rates charged in the New Mexico market. Bierman's normal rate is $550 per hour; for this engagement he lowered it to $375 per hour.[4] Likewise, a managing director and a director of MCA lowered their rates from $450 and $375 per hour to $295 and $250 per hour, respectively. MCA also agreed to assume the risk of administrative insolvency for fees charged in excess of $20,000.

For their part, the Ferguson Defendants retained CPA John Howard of Baca & Howard, P.C., as their expert witness. There is nothing in the record about Howard's hourly rate or how much he charged the Ferguson Defendants for his work.

MCA obtained a great deal of financial information about Motiva and other Ferguson Defendants. It took the data and created a usable, searchable database. From the database MCA created balance sheets for Motiva for 2012-2019.

MCA issued an expert report on March 25, 2022, opining that Motiva was insolvent from December 2012 through November 2019. On April 25, 2022, Baca & Howard issued *its* expert report, opining that Motiva was *not* insolvent at any time before November 2019. Finally, MCA issued a supplemental report on May 6, 2022, rebutting the Baca & Howard report.

---

[4] Bierman charged only $75/hour for travel time.
-3-
Case 19-12539-t7    Doc 234    Filed 08/04/23    Entered 08/04/23 13:44:12 Page 3 of 10

The Ferguson Defendants deposed Bierman on May 11, 2022.

On June 2, 2022, MCA filed its first fee application, for fees charged through March 31, 2022 ($20,577). No objections were filed, and the Court approved the fee application on June 30, 2022.

On July 23, 2022, the Ferguson Defendants filed a motion in limine to exclude Bierman's testimony. The Court heard the matter on August 1, 2022. Two days later the Court overruled the Ferguson Defendants' argument that MCA was working on an impermissible contingent fee. The Court deferred ruling on the Ferguson Defendants' "junk science" argument until after trial.[5]

The Court tried the proceeding on August 25-31, 2022. Both expert witnesses attended the trial and testified. The Court entered judgment in the Trustee's favor on all counts on October 7, 2022. The money judgments against the Ferguson Defendants varied; the largest was $630,216. The Ferguson Defendants appealed the judgments to the Tenth Circuit Bankruptcy Appellate Panel. The appeal is pending.

MCA filed its second fee application on January 26, 2023, seeking allowance of an additional $31,561.91 in fees and costs as compensation for 89 hours of time billed (mostly by Bierman). The Ferguson Defendants were the only objecting parties. They argue:

> The Application seeks approval of fees which are not reasonable and most of the work as described was not necessary. Because the fees are not reasonable and were not necessary, they should not be approved under 11 U.S.C. § 330(a)(2). *See In re Railyard Company, LLC*, 2017 WL 3017092, at *3 (Bankr. D.N.M.). MCA has already been awarded $20,576.67 of fees and costs (See Doc. 197). That amount is sufficient compensation. With this second interim application, MCA seeks an additional $31,561.91, for total compensation of $52,138.58.
> ...
>
> MCA's first application showed that MCA gathered information, created a database, analyzed the database, formed conclusions and wrote a report. While

---

[5] The Court implicitly overruled the motion in limine by relying on Bierman's insolvency and related opinions.

$20,000 is a huge amount of money for that work, it is completely unreasonable for MCA to charge an additional $30,000 to simply reinforce the conclusions already made and to appear at trial.

The Court held a final hearing on MCA's second fee application on July 11, 2023.

B.  General Requirements for Professional Fee Allowance.

Allowance of professional fees payable by a chapter 7 estate is governed by § 330,[6] which provides in part:

> (a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a … professional person employed under section 327 or 1103—
>     (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and
>     (B) reimbursement for actual, necessary expenses.

Under § 330(a)(2), the Court may award less compensation than requested.

> To be compensable, the fees must be for services that were "actual" and "necessary." § 330(a)(1)(A). If the applicant clears these hurdles, then the fees must be "reasonable." *Id. See also In re Lederman Enterprises, Inc.*, 997 F.2d 1321, 1323 (10th Cir. 1993); *In re Commercial Financial Services, Inc.*, 427 F.3d 804, 811 (10th Cir. 2005).

*In re Railyard Company, LLC*, 2017 WL 3017092, at *3 (Bankr. D.N.M.).

1.  Actual Services. Compensation can only be allowed for "actual" services performed. *See, e.g., In re Orthopaedic Technology, Inc.*, 97 B.R. 596, 601 (Bankr. D. Colo. 1989) ("The Code requires that the services actually be performed before the compensation is awarded. Therefore, work to be performed does not qualify for actual services rendered"). It is unusual for a question to arise about whether services billed for were actually performed, and the Ferguson Defendants did not object on that ground. There is no dispute that MCA's fee bills are for time actually spent on the Trustee's adversary proceeding against the Ferguson Defendants..

---

[6] All statutory references are to 11 U.S.C. unless otherwise noted.

2. <u>Necessary Services</u>. For services to be "necessary," they must be "necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case[.]" § 330((a)(3)(C); *see also In re Schupbach Investments, LLC*, 2014 WL 6680122, at *8 (10th Cir. BAP) (quoting the statute); *In re Hungry Horse, LLC*, 2017 WL 3638182, at *3 (Bankr. D.N.M.) (same). The potential benefit is measured when the services are provided, not when the fee application is heard. *In re Kitts Development*, 474 B.R. 712, 720 (Bankr. D.N.M. 2012). Unnecessarily duplicative services are not compensable. § 330(a)(4)(A)(i).

During the Second Application Period MCA did the following:

- Reviewed a deposition transcript;
- Reviewed Howard's expert witness report;
- Drafted, revised, and finalized a supplemental report;
- Prepared for and gave a deposition;
- Analyzed data and prepared reports on related-party transactions;
- Worked with Quickbooks files and other accounting records to assist the Trustee's trial counsel in preparation for trial;
- Reviewed the Ferguson Defendants' motion in limine and assisted the Trustee's counsel in opposing it;
- Prepared for trial; and
- Traveled to Albuquerque for trial, attended trial, testified, and returned to Phoenix.

The total time billed can be broken down as follows:

| Task | Time billed |
| --- | --- |
| Review deposition | .7 |
| Review Howard report | 2.3 |
| Draft supplemental report | 24.8 |
| Accounting data analysis | 5.1 |
| Bierman deposition | 4 |
| Miscellany | 2.2 |
| Analysis of related party transactions | 5.1 |
| Motion in limine | 3.4 |
| Trial and trial prep | 41.3 |
| Total | 88.9 |

The Court finds that MCA's work was necessary to assist the Trustee and his counsel in the prosecution of the adversary proceeding. The Trustee had the burden of proving the elements

of each cause of action pled, including, without limitation, insolvency. Bierman's opinions about solvency, chronic undercapitalization, and source of funds likewise were relevant and helpful, as were Bierman's testimony and opinions about the adequacy and separateness of the Ferguson Defendants' accounting records.

MCA's analysis of the commingling of Ferguson Defendants' assets was relevant to the veil-piercing claim. Likewise, MCA's testimony about Ferguson's financial and other control over the Ferguson Defendants was relevant and illuminating.

In general, the Trustee's claims against the Ferguson Defendants were somewhat technical and fact-specific. More than nine thousand accounting records and other documents were produced. Analyzing and drawing conclusions from these types of records is what accounting expert witnesses are routinely retained to do.

With considerable effort, MCA was able to turn the raw data produced by the Ferguson Defendants into something useful. During the second application period, MCA used the information to complete the work outlined above. It was all necessary to the Trustee's suit against the Ferguson Defendants.

The Ferguson Defendants focus on the description in the second fee application of the work MCA did. They point out that the description is similar to the description of work done during the first application period and argue that MCA duplicated work. This argument fails. It is true that the second fee application appears to have been somewhat hurriedly prepared. The application does not do a very good job of describing what MCA did during the second application period. However, MCA's time entries make clear that no work was duplicated and describe in sufficient detail what MCA did during the second application period. The Court relied on the billing entries

and Bierman's testimony at the final hearing, rather than the fee application, to determine that the work done was necessary.

       3.      <u>Reasonable Compensation</u>. In the Tenth Circuit, bankruptcy courts ruling on the reasonableness of professional fees must weigh the six factors set out in § 330(a)(3):

> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

In addition, bankruptcy courts also must weigh the following twelve factors from *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717–719 (5th Cir. 1974):

> (1) The time and labor required;
> (2) The novelty and difficulty of the questions;
> (3) The skill requisite to perform the service properly;
> (4) The preclusion of other employment by the consultant due to acceptance of the case;
> (5) The customary fee;
> (6) Whether the fee is fixed or contingent;
> (7) Time limitations imposed by the client or the circumstances;
> (8) The amount involved and the results obtained;
> (9) The experience, reputation, and ability of the attorneys;
> (10) The "undesirability" of the case;
> (11) The nature and length of the professional relationship with the client; and
> (12) Awards in similar cases.

*See, e.g., In re Market Center East Retail Property, Inc.*, 730 F.3d 1239, 1249 (10th Cir. 2013) (both sets of factors must be analyzed.). The Court weighs the § 330(a)(3) and *Johnson* factors as follows:

| Factor | Discussion |
|---|---|
| § 330(a)(3)(A): Time spent | MCA spent about 89 hours on the work it performed during the application period. Based on the work done, the time spent was reasonable. |
| § 330(a)(3)(B): Rates charged | MCA's rates were discounted from their regular rates. |
| § 330(a)(3)(C): Necessary/beneficial | As noted above, the services were necessary and beneficial to administration and/or completion of this case. |
| § 330(a)(3)(D): Timeliness | The services were performed timely. |
| § 330(a)(3)(E): Skill/experience | MCA was established over 20 years ago. Bierman, a CPA with 23 years of experience, has testified as an expert in a number of jurisdictions, He has the knowledge, skill, and experience to qualify as an expert accountant/financial consultant in a case of this size and complexity. |
| § 330(a)(3)(F): Customary non-bankruptcy compensation | The hourly rates charged by MCA in this case were significantly less than MCA's normal rates. |
| *Johnson* factor ("JF") 1: Time and labor required | The time MCA spent was reasonable considering the amount of work done, some of which was required by actions the Ferguson Defendants took. |
| JF 2: Novelty and difficulty of the questions | The legal and accounting issues raised in the adversary proceeding were not enormously complicated, but they were not everyday issues, and there were a lot of records to master. |
| JF 3: Skill requisite to perform the legal service properly | MCA had the skills to perform all needed services. |
| JF 4: Preclusion of other employment due to acceptance of the case | Providing expert witness services in this chapter 7 case precluded MCA from work on other matters, at higher hourly rates. |
| JF 5: Customary fee | The rates charged by MCA were less that their customary rates. |
| JF 6: Whether the fee is fixed or contingent | The fee was not contingent on the outcome. |
| JF 7: Time limitations imposed by the client or circumstances | MCA did all work timely. |
| JF 8: Amount involved and results obtained | The judgments against the Ferguson Defendants varied, the largest being more than $630,000. MCA's total fees, including those allowed in the first application, were $53,264.00. |
| JF 9: Experience, reputation, and ability of the consultant | MCA and Bierman are experienced and have good reputations. |
| JF 10: Undesirability of the case | This engagement was desirable. |
| JF 11: Nature and length of professional relationship with the client | Not applicable. |
| JF 12: Awards in similar cases | The fees MCA charged in this case were lower than those MCA charged in comparable cases. |

The § 330/*Johnson* factors weigh heavily in favor of finding that the fees charged were reasonable. The Court finds that the compensation sought for the services rendered is reasonable.

CONCLUSION

The Court finds and concludes that MCA's services rendered to the estate in this case were actual and necessary and that the fees charged for those services are reasonable. The Court will enter a separate order granting the application.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: August 4, 2023

Copies to: electronic notice recipients